459 S.E.2d 329

Mark WILLIAMS, Plaintiff
Below, Appellant,

v.

PRECISION COIL, INC., Defendant
Below, Appellee.

No. 22493.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 28, 1995.

Decided March 24, 1995.

56

Brent E. Beveridge, Fairmont, for appellant.

C. David Morrison, John R. Merinar, Jr., Steptoe & Johnson, Clarksburg, for appellee.

CLECKLEY, Justice:

The plaintiff below and appellant herein, Mark Williams, sued the defendant below and appellee herein, Precision Coil, Inc., for, *inter alia*,[1] breach of an employment contract. The January 27, 1994, order of the Circuit Court of Harrison County granted summary judgment in favor of the defendant pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure. On appeal, the plaintiff asserts that the defendant altered his at-will employment status and, thereby, transformed him into a contractual employee. The plaintiff contends the defendant breached his employment contract by discharging him. Upon review, we affirm the order granting summary judgment in favor of the defendant.

---

**1.** While other claims unsuccessfully were asserted against the defendant, the only one challenged on appeal is the claim for breach of an employment contract.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The plaintiff completed a job application form on August 4, 1990, and began working for the defendant on August 22, 1990. Although the parties dispute whether or not the defendant complied with the provisions in the employee handbook with regard to terminating an employee for "excessive absenteeism," it is clear the defendant gave the plaintiff two warnings for absenteeism in November, 1990, and another warning for absenteeism on April 10, 1991. The April, 1991, warning stated, in part, that it was a "third and final written warning whereas any future absences may be considered just cause for [the plaintiff's] termination." Shortly thereafter, the plaintiff again missed work, and by letter dated April 25, 1991, the plaintiff was informed he was terminated effective April 24, 1991, the date of his absence. The letter generally provided the plaintiff was terminated as the result of absenteeism. According to the letter, during an eight-month period, the plaintiff missed twenty-seven days of work prior to his most recent absence for which he was being terminated.

After his termination, the plaintiff filed a two-count complaint in the circuit court. The plaintiff alleged in count one that the defendant discriminated against him on the basis of handicap in violation of the West Virginia Human Rights Act, W.Va.Code, 5–11–1, *et seq.* The plaintiff alleged in count two that, by terminating him, the defendant breached an implied covenant of good faith and fair dealing. Upon motion of the defendant, the circuit court struck the plaintiff's second count for not stating a viable cause of action.[2]

The defendant then filed a motion for summary judgment as to the plaintiff's first count claiming discrimination of the basis of handicap.

In response, the plaintiff filed a motion to amend his complaint to include an allegation that the defendant breached the terms of an employment contract.[3] The plaintiff claimed the defendant created an employment contract with him by virtue of the job application form he completed and the provisions in the employee handbook the defendant adopted. The defendant filed a response in opposition to the plaintiff's motion to amend and, in the alternative, filed a motion for summary judgment on the amended complaint.

On September 2 and October 27, 1993, the circuit court heard arguments on all the pending motions. By order dated January 27, 1994, the circuit court found the plaintiff failed to show a *prima facie* case of handicap discrimination and awarded summary judgment for the defendant on this count.[4] The circuit court also permitted the plaintiff to amend his complaint to include an action for breach of an express contract of employment; however, the circuit court awarded summary judgment for the defendant on this action.

In granting summary judgment, the circuit court concluded as a matter of law that the defendant made no express contracts of employment in either its job application form or in its employee handbook.[5] In addition, the circuit court stated neither the job application form nor the employee handbook contained "'very definite' promises of employment . . . sufficient to support a cause of action under the 'implied-in-fact' contract theory," and, even if they did contain such a promise, the disclaimer in the foreword of

---

**2.** According to the circuit court's order, the plaintiff agreed to have it struck.

**3.** The circuit court's order that struck the plaintiff's second count was entered on June 15, 1993, *nunc pro tunc* February 11, 1993. This order directed the plaintiff to file an amended complaint on or before February 25, 1993. Apparently, an amended complaint was not filed prior to February 25. After certain discovery was conducted, the plaintiff made a motion for leave to amend his complaint and served the motion along with the amended complaint upon the defendant on or about September 2, 1993.

**4.** The plaintiff does not dispute this ruling on appeal.

**5.** The circuit court also awarded costs to the defendant pursuant to Rule 54(d) of the West Virginia Rules of Civil Procedure. This rule provides, in part: "Except when express provision therefor is made either in a statute of this State or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"

the employee handbook prevents any statements from becoming binding upon the defendant. Thus, the circuit court determined the disclaimer "precludes the plaintiff from establishing contractual rights based upon any statements therein." (Citations omitted).

## II.

### SUMMARY JUDGMENT

██ The sole issue in this appeal is whether summary judgment was appropriate. A circuit court's entry of summary judgment is reviewed *de novo, see* Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994); *Drewitt v. Pratt,* 999 F.2d 774, 778 (4th Cir.1993); and, therefore, we apply the same standard as a circuit court. *Helm v. Western Maryland Ry. Co.,* 838 F.2d 729, 734 (4th Cir.1988).[6]

We begin, as we did in *Painter,* with the premise that our pronouncements regarding the standard for granting summary judgments are not an innovation in our jurisprudence but are an application of settled principles long recognized in this State. We have undertaken a long and extensive reexamination of the *Painter* decision and reaffirm the principles it announced. *Painter* was but an explication of the basic principles undergirding Rule 56 of the West Virginia Rules of Civil Procedure. Due to the importance of Rule 56 to civil litigation practice and the misunderstanding that may have been gener-

ated by the *Painter* decision, our holding here will be spelled out with some specificity.

Briefly stated, our holding is: "Rule 56 of the West Virginia Rules of Civil Procedure plays an important role in litigation in this State. It is 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' " if there essentially "is no real dispute as to salient facts" or if it only involves a question of law. *Painter,* 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting Oakes v. Monongahela Power Co.,* 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Indeed, it is one of the few safeguards in existence that prevent frivolous lawsuits from being tried which have survived a motion to dismiss. Its principal purpose is to isolate and dispose of meritless litigation. To the extent that our prior cases implicitly have communicated a message that Rule 56 is not to be used, that message, hereby, is modified.

██ When a motion for summary judgment is mature for consideration and properly is documented with such clarity as to leave no room for controversy, the nonmoving party must take the initiative and by affirmative evidence demonstrate that a genuine issue of fact exists. Otherwise, Rule 56(e) empowers a circuit court to grant the pretrial motion. To be clear, there is no need for a circuit court to wait until after evidence has been received at trial when the standard we articulated in *Painter* has been met and summary judgment is warranted.[7] On the other hand,

6. The West Virginia Rules of Civil Procedure practically are identical to the Federal Rules. Therefore, we give substantial weight to federal cases, especially those of the United States Supreme Court, in determining the meaning and scope of our rules. *See generally Burns v. Cities Serv. Co.,* 158 W.Va. 1059, 217 S.E.2d 56 (1975); *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). As a result of today's decision, there should be no doubt that our interpretation of Rule 56 is consistent with that of the United States Supreme Court.

7. We are aware of language in our prior cases suggesting "[e]ven if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment." Syl. pt. 1, *Masinter v. WEBCO Co.,* 164 W.Va. 241,

262 S.E.2d 433 (1980). We believe this recommendation is proper in cases where there is doubt as to the existence of a genuine issue of material fact, but we do not believe it was ever meant to be override the explicit mandate of Rule 56(e) which states, in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, *but his response,* by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, *shall* be entered against him." (Emphasis added).

Unquestionably, the drafters of Rule 56 contemplated that summary judgment would be readily available as a procedural device when used in conjunction with the broad discovery afforded by

and as suggested by Rule 56(c), this Court will reverse summary judgment if we find, after reviewing the entire record, a genuine issue of material fact exists or if the moving party is not entitled to judgment as a matter of law. In cases of substantial doubt, the safer course of action is to deny the motion and to proceed to trial.

■ Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper only where the moving party shows by "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] In Syllabus Point 1 of *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992), we reiterated the standard for granting summary judgment:

> "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)."

*See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The circuit court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). Consequently, we must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986); *Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980); *Andrick*, 187 W.Va. at 708, 421 S.E.2d at 249. In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. Summary judgment should be denied "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951). Similarly, when a party can show that demeanor evidence legally could affect the result, summary judgment should be denied.

■ Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[9] While the underlying facts and all

---

the West Virginia Rules of Civil Procedure. If the nonmoving party does not controvert the proof offered in support of the motion, and the moving party's affidavits show facts that support a judgment as a matter of law, Rule 56(e) mandates summary judgment be granted. The notion of a "genuine issue of material fact" can refer only to an issue that properly can be submitted to a jury, i.e., a trialworthy issue. If the nonmoving party cannot demonstrate any reasonable chance of avoiding a directed verdict at trial, then there is simply no justification for a trial and the motion for summary judgment should be granted.

**8.** As we have stated, an order granting summary judgment engenders plenary review. This Court may consider all the facts contained in a sum-

mary judgment record. *Haga v. King Coal Chevrolet Co.*, 151 W.Va. 125, 150 S.E.2d 599 (1966). *See also Hines v. Massachusetts Mut. Life Ins. Co.*, 43 F.3d 207, 209 (5th Cir.1995). We may affirm a circuit court's decision on any adequate ground even if it is other than the one on which the circuit court actually relied. *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609 (11th Cir.1995); *Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir.1994).

**9.** In fact, Rule 56(e) mandates the entry of a summary judgment where the party opposing the motion fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless offer some "concrete evidence from which a reasonable ... [finder of fact] could return a verdict in ... [its] favor" or other " 'significant probative evidence tending to support the complaint.' " *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 217, *quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, 593 (1968). *See also Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356, 89 L.Ed.2d at 552.[10]

■ In other words, as suggested in *Crain v. Lightner,* 178 W.Va. 765, 769 n. 2, 364 S.E.2d 778, 782 n. 2 (1987), the initial burden of production and persuasion is upon the party moving for a summary judgment. If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of material fact, the burden of production shifts to the nonmoving party "who must either (1) rehabilitate the evidence attacked by the movant, (2) produce additional evidence showing the existence of a genuine issue for trial or (3) submit an affidavit explaining why further discovery is

necessary as provided in Rule 56(f)." [11] 178 W.Va. at 769 n. 2, 364 S.E.2d at 782 n. 2.

■ To be specific, the party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. The evidence illustrating the factual controversy cannot be conjectural or problematic. It must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve. The evidence must contradict the showing of the moving party by pointing to specific facts demonstrating that, indeed, there is a "trialworthy" issue.[12] A "trialworthy" issue requires not only a "genuine" issue but also an issue that involves a "material" fact. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.[13]

■ A nonmoving party need not come forward with evidence in a form that would be *admissible at trial in order to avoid summary judgment. Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. However, to withstand the motion, the nonmoving party must show there will be

---

**10.** However, as explained by the Fourth Circuit in *Ford Motor Co. v. McDavid,* 259 F.2d 261, 266 (4th Cir.), *cert. denied,* 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958), only "reasonable inferences" from the evidence need be considered by a court:

"[I]t is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."

We need not credit purely conclusory allegations, indulge in speculation, or draw improbable inferences. Whether an inference is reasonable cannot be decided in a vacuum; it must be considered "in light of the competing inferences" to the contrary. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 588, 106 S.Ct. at 1356–57, 89 L.Ed.2d at 553. (Citation omitted).

**11.** We find it significant that this Court in *Crain* suggested that even if the nonmoving party responded in one or more of these ways, if "the court determines that the movant has shouldered his or her ultimate burden of persuading the

court that there is no genuine issue of *material* fact," the granting of summary judgment is appropriate. (Emphasis added). 178 W.Va. at 769 n. 2, 364 S.E.2d at 782 n. 2.

**12.** A conflict in the evidence does not create a "genuine issue of fact" if it unilaterally is induced. For example, when a party has given clear answers to unambiguous questions during a deposition or in answers to interrogatories, he does not create a trialworthy issue and defeat a motion for summary judgment by filing an affidavit that clearly is contradictory, where the party does not give a satisfactory explanation of why the testimony has changed. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2726 at 30–31 (2d ed. Supp.1994).

**13.** In this context, the term "material" means a fact that has the capacity to sway the outcome of the litigation under the applicable law. If the facts on which the nonmoving party relies are not material or if the evidence "is not significantly probative," *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citations omitted), *brevis* disposition becomes appropriate.

enough competent evidence available at trial to enable a finding favorable to the nonmoving party. *Hoskins v. C&P Tel. Co. of W.Va.*, 169 W.Va. 397, 400, 287 S.E.2d 513, 515 (1982) (allegations in an affidavit that would be inadmissible at trial cannot be used to respond to a motion for summary judgment). For example, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. (Citations omitted). "[I]f the factual context renders [the nonmoving party's] claim implausible—if the claim . . . simply makes no economic sense—[the nonmoving party] must come forward with more persuasive evidence to support [the] claim[.]" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356, 89 L.Ed.2d at 552.[14]

 Courts take special care when considering summary judgment in employment and discrimination cases because state of mind, intent, and motives may be crucial elements. It does not mean that summary judgment is never appropriate. *See generally, Sias v. W–P Coal Co.*, 185 W.Va. 569, 408 S.E.2d 321 (1991); *Ballinger v. North Carolina Agric. Ext. Serv.*, 815 F.2d 1001, 1004–05 (4th Cir.), *cert. denied*, 484 U.S. 897, 108

S.Ct. 232, 98 L.Ed.2d 191 (1987). To the contrary, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. (Emphasis in original). The essence of the inquiry the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

 Moreover, both this Court and the United States Supreme Court apply the general principle that summary judgment is appropriate only after the opposing party has had "adequate time for discovery." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. *See also* W.Va.R.Civ.P. 56(f); *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5, 91 L.Ed.2d at 213 n. 5. In fact, we have said that a decision for summary judgment before the completion of discovery is "precipitous." *Board of Educ. of the County of Ohio v. Van Buren and Firestone, Arch., Inc.*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980). Rule 56(f) provides the appropriate relief when a party needs additional information or time to respond to a motion for summary judgment.[15] Syl. pt. 3, *Crain, supra.* Subject to the conditions of

---

**14.** The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecast evidence. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). However, it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). (Citation omitted). While a verified complaint can be considered as summary judgment evidence, *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994), self-serving assertions without factual support in the record will not defeat a motion for summary judgment. *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 346 S.E.2d 788 (1986). Thus, a nonmoving party cannot avoid summary judgment merely by asserting that the moving party is lying. Rather, Rule 56 requires a nonmoving party to produce specific facts that cast doubt on a moving party's claims or raise

significant issues of credibility. The nonmoving party is required to make this showing because he is the only one entitled to the benefit of all *reasonable* or *justifiable* inferences when confronted with a motion for summary judgment. Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuition, or rumors.

**15.** Rule 56(f) of the Rules of Civil Procedure provides:

"*When affidavits are unavailable.*—Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Rule 56(g),[16] we believe a continuance of a summary judgment motion is mandatory upon a good faith showing by an affidavit that the continuance is needed to obtain facts essential to justify opposition to the motion. When a party does not avail himself of Rule 56(f), it is generally not an abuse of discretion for a circuit court to rule on a motion for summary judgment. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 241–42 (4th Cir.1995), *quoting Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2nd Cir.1994) (" 'failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate' ").

▐▐▐ Finally, in making a ruling, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513, 91 L.Ed.2d at 215. The Court in *Anderson* stated: "[W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof

that would apply at trial on the merits." 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. *See also Crain*, 178 W.Va. at 769 n. 1, 364 S.E.2d at 782 n. 1.[17]

It is through the lens of these principles that we examine the circuit court's grant of summary judgment.

### III.

### ASSIGNMENTS OF ERROR

▐▐▐ The essence of the plaintiff's assignments of error is that his discharge breached a contract of employment created by the combination of a completed job application form and an employee handbook. The plaintiff argues that the employment terms purportedly set forth in those documents are ambiguous and present an appropriate jury question.[18] The circuit court found there was nothing in the handbook or the application which reasonably could be read as altering the plaintiff's at-will status. Accordingly, the plaintiff asserts the circuit court erred by

---

**16.** Rule 56(g) of the Rules of Civil Procedure states:

> *"Affidavits made in bad faith.*—Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt."

**17.** It is necessary for a circuit court to give appropriate consideration to the allocation of burden of proof at trial. As suggested earlier, a summary judgment motion involves a forecast of the evidence that is to be offered at trial. We normally operate under the assumption that a plaintiff will have the burden of proof at the trial on the merits. Obviously, in these cases a plaintiff only is entitled to summary judgment where his evidence is so strong that he would be entitled to a directed verdict at trial. This burden is very heavy and summary judgment rarely is granted in favor of the party having the burden of proof. The situation for a defendant usually is different. Except as to affirmative defenses, a defendant does not bear the burden of proof. Therefore, a defendant may be entitled to summary judgment if he can negate an issue as to which a plaintiff as the nonmoving party has the burden of proof or, if he can show that the

plaintiff will be unable to prove a critical fact at trial.

**18.** As an initial matter, the plaintiff contends the issue of whether a contract exists is a question of fact and, thus, should have been determined by a jury rather than the circuit court. While the determination of what constitutes a contract under our relevant cases is a question of law, the determination of whether particular circumstances fit within the legal definition of a contract under our cases is a question of fact. Subject to one exception, the determination of factual issues is solely within the province of the jury. Of course, that exception is Rule 56 dealing with summary judgments. *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964). Furthermore, we agree with the Ninth Circuit Court of Appeals that " '[i]n interpreting a contract, a court determines the existence of an ambiguity as a matter of law.' " *United States v. Johnson*, 43 F.3d 1308, 1310 (9th Cir.1995), *quoting Bauhinia Corp. v. China Nat'l Mach. & Equip. Import & Export Corp.*, 819 F.2d 247, 249 (9th Cir.1987).

Although some jurisdictions have held that whether or not a particular employment relationship has rebutted the at-will employment presumption is almost exclusively a jury issue, we have made no such shift in West Virginia law. *See Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 399, 643 A.2d 546, 553–54 (1994) (implied contract claims tend to present questions of material fact precluding summary judgment).

granting the defendant's motion for summary judgment.

■ As a general rule, West Virginia law provides that the doctrine of employment-at-will allows an employer to discharge an employee for good reason, no reason, or bad reason without incurring liability unless the firing is otherwise illegal under state or federal law. In *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986),[19] we considered for the first time the issue of whether guarantees of job security, discharge for cause provisions, or express guidelines for terminations contained in an employee handbook or similar document may abrogate an at-will employment relationship. In Syllabus Points 5 and 6 of *Cook*, we stated:

"5. A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.

"6. An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons."

In making our decision, we cited several jurisdictions which had found employment contracts by virtue of personnel manuals and concluded that "[a] common thread running through those cases ... is the existence of a definite promise by the employer not to discharge the employee except for cause." 176 W.Va. at 374, 342 S.E.2d at 459, *citing Shah v. American Synthetic Rubber Corp.*, 655 S.W.2d 489 (Ky.1983); *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983); *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982).

■ To assess plaintiff's contentions that the defendant's application form and handbook created such a contract, we begin with the relevant language contained on the job application form, which provides:

"Should I be employed by the company, I agree that:

"1. My employment shall be in accordance with the terms of: (a) this application, (b) company rules and regulations and any amendments thereto and, (c) any applicable labor agreement. The company shall have the right to amend, modify, or revoke its rules and regulations at any time. I will familiarize myself promptly with such rules and regulations and will abide and be bound by the rules and regulations now or hereafter in effect.

"2. My employment may be terminated by the company at any time without advance notice. Its only obligation being to pay wages or salary earned by me to date of termination without limitation. Failure to abide by company rules and regulations, failure to pass any company physical examination, and the falsification of information given by me in this application will entitle the company to terminate my employment."

According to the plaintiff, the above language created a contract: Upon his signature on the application and the defendant's decision to hire him, he and the defendant became bound to follow the terms of the application form and the "company rules and regulations[.]" (The parties agree there was no "applicable labor agreement.") The plaintiff then insists it is for a jury to decide what is the meaning of the contract's terms. The application form, however, contains no terms that reasonably can be construed to promise job security or can be construed as altering an employee's at-will status. If nothing in the challenged document tends to alter the at-will status, then summary judgment properly is granted.

Even if we concede to the plaintiff that the application created a "contract," all that it could do is incorporate by reference "rules and regulations" of the defendant. Assuming further, for the sake of argument, that a jury reasonably could conclude the reference of this application form to the "rules and

**19.** *Modified* in *Suter v. Harsco Corp.*, 184 W.Va. 734, 403 S.E.2d 751 (1991).

regulations" embraces the defendant's handbook, the plaintiff still cannot prevail unless he shows that the handbook, standing alone, renders his discharge unlawful. Thus, this application form adds nothing to whatever contractual rights, if any, are created by the handbook.

Accordingly, we turn to the language in the employee handbook. At the outset, the defendant insists that the following paragraph in the handbook's "FORWARD," *sic*, precludes reading the document as a contract:

"The policy statements contained in this manual are not intended in any way to create a contract of employment with any employee. It remains management's right and responsibility to make new policies and change existing policies within the boundaries of current law as it sees fit. Management must retain this right to assure that we remain a viable, growing organization."

The plaintiff counters by arguing that if this language is given the effect of a valid disclaimer, it renders meaningless statements made in the employee handbook with regard to the defendant's obligations to its employees.[20]

█ Our cases establish that an employer may include in a handbook a disclaimer that prevents it from contractually limiting the employer's discretion to discharge employees. To make such a disclaimer effective, however, the employer must do so in language that is clear, conspicuous, and likely to be understood by the subject employees.

*Dent v. Fruth,* 192 W.Va. 506, 453 S.E.2d 340 (1994); *Suter v. Harsco Corp.,* 184 W.Va. 734, 403 S.E.2d 751 (1991). We recognize that unduly restrictive interpretations of attempted disclaimers could discourage employers from providing handbooks at all and, thus, would deprive workers of helpful guidance as to what is expected of them in the workplace. On the other hand, if an employer retains the right to go outside a published handbook to discharge employees for any reason or no reason, then the handbook is at best meaningless in guiding employees as to what is expected of them and at worst misleading.

█ Moreover, we look with disfavor upon an employer who induces or requires its employees to adjust their conduct in significant ways,[21] who expressly or impliedly promises job security, or who attracts or retains good workers with that promise, but who then attempts to avoid all mutuality of obligations by inserting an obscure or obtuse disclaimer into a handbook.[22] Thus, we require that for a disclaimer to be valid, it must be sufficiently clear, conspicuous, and understandable so that employees will know that the handbook provides them with no protection and it only is intended to benefit one side of the employment relationship, i.e., the employer.

█ In this case, the handbook passage quoted above fails to provide the clear, conspicuous, and understandable language to qualify as a valid disclaimer. First, the plaintiff could argue, although he has not,

**20.** · Specifically, the plaintiff points to "SECTION 1" of the handbook which provides, in part: "We [the defendant] have a responsibility *to you,* and *to all of our employees,* to treat you fairly and to make sure that all policies, rules, and code of conduct are enforced consistently." (Emphasis in original). In addition, the plaintiff cites the defendant's "Union Position Statement," which generally states the defendant provide its employees with "good working conditions, good wages, good benefits, fair treatment, and ... personal respect" and, therefore, a union is unnecessary.

**21.** Although most employer-generated rules limiting employee behavior are based on common sense and relate to the safe and efficient operation of the business, such rules sometimes extend into employees' off-work activities (e.g., regulat-

ing employee participation in risky recreational sports, use of tobacco products, and homosexual relationships) designed to promote ancillary goals rather than preserve business efficiency or safety. *See, e.g.,* Janice L. Miller, David B. Balkin, & Robert E. Allen, *Employer Restrictions on Employees' Legal Off–Duty Conduct,* 44 Lab.L.J. 208–19 (April 1993).

**22.** There is a certain unseemliness in an employer in effect saying to its employees: "Here are the rules; if you abide by them, I will continue to employ you," while simultaneously saying: "If you break your promise and fail to abide by the rules, you are fired; but, if I break my promise and fire you for reasons or by procedures contrary to the rules, you cannot do anything about it."

that the language, *"The policy statements contained in this manual are not intended in any way to create a contract of employment,"* does not negate the entirety of the handbook from creating mutual obligations and employee job security, but only prevents the handbook's "policy statements" from creating a contract. Given the ambiguity of the term "policy statements," its interpretation would have to be left to a jury.[23] Second, the plaintiff could argue, although he has not, that the sentences following the reference to policy statements define what precisely is being disclaimed. The ensuing sentences say only that the employer reserved its right to change its policies and rules at any time, which is, of course, management's prerogative. *Hogue v. Cecil I. Walker Machinery Co.,* 189 W.Va. 348, 431 S.E.2d 687 (1993).

Retaining the right to make changes, however, does not necessarily mean promises explicitly or implicitly made by an employer through its handbook are not enforceable, at least until such time as they are in fact changed. It is, for example, a basic notion of due process of law that a governmental agency must abide by its own stated procedures even though it is under no constitutional obligation to provide the procedures in the first place and even though it can change the procedures at any time; so long as the procedures are in place, the agency must follow them. *E.g., United States v. Nixon,* 418 U.S. 683, 695–97, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039, 1057–58 (1974); *Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403, 1418 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *State ex rel. Wilson v. Truby,* 167 W.Va. 179, 281 S.E.2d 231 (1981); *Trimboli*

*v. Board of Educ.,* 163 W.Va. 1, 254 S.E.2d 561 (1979). There is no reason why this basic principle of fairness should not also imbue our interpretation of employment contracts. Finally, we note our decision in *Dent, supra,* held that language substantially similar to the alleged disclaimer in this case was ineffective in relinquishing the employer from contractual liability.[24]

Although we think that a jury question could exist with regard to the contractual implications of the defendant's handbook, we, nevertheless, affirm the circuit court's decision granting summary judgment to the defendant for another reason. As recognized in *Cook, supra,* and its progeny, *e.g., Dent; Suter; Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46 (1988), a plaintiff's cause of action is one based on contract. Typically, in such contract cases, an employer has issued a handbook or similar manual that sets forth the requirements for a job and, in effect, informs the employees that if they abide by the rules they can expect job security. The employees, acting in reliance on such promises, either accepted employment or continued in the same employment and conformed their conduct to the rules. This exchange and reliance is all a plaintiff need show in a case relying on a *Cook* cause of action.[25]

We recognize, however, that unless we are to make the contractual basis of *Cook* a complete fiction, a plaintiff will at least have to prove that he knew about the existence of the handbook. After all, it is difficult to accept that a plaintiff relied upon a document the existence and the contents of which he was unaware. In this case, the plaintiff failed to offer such evidence in response to

---

**23.** A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction. Whether a contract is ambiguous is a legal question reviewable by this Court *de novo. See Thrift v. Hubbard,* 44 F.3d 348, 357–58 (5th Cir.1995).

**24.** Our adherence to the presumption of at-will employment reflects reliance upon an underlying theory that stresses the freedom of contract. Due to the fact that an employee is at liberty to leave his or her employment for any reason or for no reason, notions of fundamental fairness

underlie the concept of mutuality which extends a corresponding freedom to the employer. The concept of mutuality is not a one-way street. Thus, where the employer creates conditions of employment, the principle of mutuality normally would require that each party have the right to hold the other to a positive agreement.

**25.** In other words, a plaintiff need not adduce evidence of any reliance beyond the fact that he or she remained in the defendant's employ and, thereby, agreed to the terms of the handbook/contract.

the defendant's motion to dismiss. The record, therefore, shows that the plaintiff failed to put into dispute an essential element of his cause of action, i.e., that he knew of the handbook and accepted its terms by continuing in the defendant's employ.[26]

## IV.

## CONCLUSION

In sum, we find the plaintiff failed to show that he and the defendant had entered into a contract that limited the defendant's ability to discharge the plaintiff at will. Even assuming the plaintiff's employment status was contractual, we further conclude the plaintiff received the benefit of the disciplinary provisions and, therefore, we find the defendant breached no employment contract in terminating the plaintiff. For the foregoing reasons, we affirm the order of the Circuit Court of Harrison County granting summary judgment in favor of the defendant.

Affirmed.

WORKMAN, Justice, concurs and reserves the right to file concurring opinion.

BROTHERTON, Justice, did not participate.

FOX, Judge, sitting by temporary assignment.

---

**26.** Alternatively, we have reviewed the disciplinary policy of the defendant and we conclude, even assuming *arguendo* that the plaintiff's at-will status was altered, he received the procedure to which he was entitled. Thus, we are persuaded that the defendant complied in substance with the disciplinary procedure. Accordingly, the plaintiff received all the disciplinary procedure to which he was entitled, the plaintiff, therefore, cannot complain. " 'If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.' " *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir.1993), *quoting World–Wide Rights Ltd. v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir.1992).