465 S.E.2d 391

**HN CORPORATION, Plaintiff Below, Appellant,**

v.

**CYPRUS KANAWHA CORPORATION, Defendant Below, Appellee.**

No. 22702.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1995.

Decided Nov. 16, 1995.

Richard J. Bolen, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Appellant.

Charles I. Jones, Jr., John F. McCuskey, John F. Hussell, IV, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, for Appellee.

PER CURIAM:

HN Corporation (HN) appeals a decision by the Circuit Court of Kanawha County granting Cyprus Kanawha Corporation (Cyprus) summary judgment by dismissing HN's complaint against Cyprus. The circuit court found HN was not in privity of contract with Cyprus—the contract under which HN attempted to bring suit. The circuit court's finding was based on a reservation provision in an assignment between Mullins Coal Company (Mullins) and HN, which, according to the circuit court, reserved to Mullins the right to bring suit in these circumstances under the contract. Because the assignment did grant HN the right to bring this suit

against Cyprus, we reverse the circuit court and remand the case for further proceedings.

I

Factual Background

On March 7, 1989, an agreement between Cyprus and Hawks Nest Mining Company (Hawks Nest) (the acquisition agreement) was signed.[1] Under the acquisition agreement, Cyprus, the "Purchaser," agreed to buy certain coal assets from Hawks Nest, the "Seller." As part of the consideration Cyprus agreed to pay Hawks Nest various "production payments" including "50¢ per ton on all coal ... produced after the Closing Date...."

On April 30, 1991, Hawks Nest assigned certain rights it had arising under the acquisition agreement to Mullins (the first assignment). One of the assigned rights was "all rights to receive the payment of all amounts" under the certain sections of the acquisition agreement and "all rights to compel performance by Cyprus of, and assert claims for damages arising out of or for breach of or default by Cyprus" under certain sections of the acquisition agreement. Apparently, there is no dispute concerning the meaning or extent of the first assignment. In fact, Cyprus alleges that Mullins, because of the first assignment and not Hawks Nest, would be the proper plaintiff in the present action.

On May 10, 1991, Mullins assigned certain rights it had acquired under the first assignment to HN (the second assignment).[2] The meaning of a reservation provision of the

1. Mullins and Imperial Pacific Investments, Inc. (IPI), also signed the acquisition agreement; however, their roles under the acquisition agreement were to perform certain enabling actions. The record contains no allegations concerning these enabling actions or the role(s) of Mullins or IPI in the acquisition agreement.

The relationship among Hawks Nest, Mullins, IPI and HN is not clear in the record before this Court. Included in the record are some documents from a case in the United States Bankruptcy Court for the Southern District of West Virginia involving Chapter 11 voluntary petitions from Hawks Nest and Mullins (other petitions may also be involved). See In re Hawks Nest Mining Company, el al, No. 92–21140 (Bankr.S.D.W.Va.)

(Hawks Nest Bankr.). In Hawks Nest Bankr., Judge Ronald Pearson entered an order dated November 14, 1994 finding "that the numerous transactions between Cyprus, Mullins, Hawk [sic] Nest and HN are extremely complex given the nature of the transfers, the intermingled nature of the corporate relationships, and the various documents executed by the parties."

2. IPI acknowledged the first assignment and, along with Hawks Nest, acknowledged the second assignment. The final page of the second assignment consists of a "Guaranty" in which IPI "guarantees the full and complete performance by Mullins Coal Company, Inc. of all its obligations arising under paragraph 3(b) of this Assignment...."

second assignment is the central question of this case. The reservation provision is found in paragraphs 1(e) and 3(b) of the second assignment. HN contends that these two paragraphs are a subrogation arrangement whereby Mullins was subrogated to HN's collection rights against Cyprus if and only if Mullins first paid HN the amount of the payments withheld by Cyprus. It is undisputed that no such payment was made by Mullins. Without such payment by Mullins, HN contends it, and not Mullins, has the right to bring suit.

Cyprus contends that Mullins reserved and therefore, possesses the right to bring an action to compel Cyprus to pay any allegedly erroneously reduced production payments. According to HN's complaint, the substantive issues in this case concern reduced production payments under the acquisition agreement. Cyprus alleges that this case arose when it exercised its right to set off for overpayment of royalties on coal produced from the properties subject to the acquisition agreement. Cyprus argues because the substantive issues involve an interpretation of the acquisition agreement, Mullins, a signor of the acquisition agreement rather than HN, would be the appropriate party to handle such a dispute.

HN also cites paragraph 7 of the second assignment wherein Mullins appointed HN as the "Assignor's attorney-in-fact, with full authority ... to take any action ... to accomplish the purposed of this Agreement," and paragraph 8, wherein if Mullins fails to act, HN "may itself perform, or cause performance...." HN maintains that these provisions also give it the right to maintain this action. Cyprus argues that Mullins' reservation in paragraphs 1(e) and 3(b) removed actions such as this from the broad net operation of paragraphs 7 and 8.

The underlying dispute began in 1992, when after paying HN some royalties, Cyprus alleges that it discovered it had overpaid royalties on coal produced from the properties it acquired in the acquisition agreement. The record contains a letter dated October 30, 1992 from Cyprus to Hawks Nest and HN notifying them of the alleged overpayment and Cyprus' recoupment plan. According to Cyprus, as of the third quarter of 1992, Cyprus had paid $751,454.71 in royalties under the acquisition agreement. Of that sum, Cyprus contends that overpayments to Hawks Nest totaled $214,889.50 and to HN/Prince totaled $294,469.50.[3] Thereafter Cyprus began to recoup the alleged excess payments from current/future royalties as they accrued. Apparently, Cyprus maintains that because no royalty payment is required by the acquisition agreement for its coal production from a certain seam of coal (the Chilton seam), it overpaid $509,359 in royalties and seeks, by offset, to recoup the overpayments.[4]

On August 10, 1993, HN filed suit in the Circuit Court of Kanawha County against Cyprus because of Cyprus' refusal to pay royalties on the coal extracted from the Chilton seam and its use of offset to recoup the alleged incorrect royalties already paid on coal extracted from the Chilton seam. On September 23, 1993, Cyprus filed a "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted" alleging that because the dispute is between Mullins and Cyprus, HN's complaint does not state a claim against Cyprus. The theory that Cyprus used to challenge HN's claim was a lack of privity, e.g. standing. In opposition to Cyprus' motion to dismiss, on September 29, 1993, HN filed with the circuit court the affidavit of Randall Highly, Vice President of HN. Attached as an exhibit to the affidavit was a Confirmatory Assignment dated September 22, 1993 between Mullins and HN.[5]

---

3. The record is not clear concerning who Prince is or what role Prince has in the payment of royalties by Cyprus.

4. Because of the posture of the pleadings, Cyprus has not been required to file a formal answer. We have gleaned Cyprus' position from various documents in the record including documents from Mullins' bankruptcy proceedings. *See Hawks Nest Bankr., supra* note 1.

5. The Confirmatory Assignment, which was not part of the acquisition agreement, the first assignment or the second assignment, was a devise used by HN to explain the second assignment and was not intended to change the substantive portions of the second assignment relevant to the disposition of this case.

The circuit court, citing Rule 201 of the *W.Va.R.Evid.*, took judicial notice that Mullins was a debtor in Case No. 92–21140, which was then pending in the United States Bankruptcy Court for the Southern District of West Virginia based on the voluntary filing of a bankruptcy petition on September 9, 1993. *See Hawks Nest Bankr., supra* note 1. Because of the attachments to HN's response and with the parties' consent, the circuit court treated the motion to dismiss as a motion for summary judgment under Rule 56 of the *W.Va.R.Civ.P.* The circuit court, based on its finding that the second assignment was clear and unambiguous, refused to consider the Confirmatory Assignment.[6] The circuit court found that Mullins, not HN, has the right to prosecute this claim and dismissed HN's complaint. After summary judgment was granted to Cyprus, HN appealed to this Court. On appeal, the central question concerns the meaning of the reservation provision of the second assignment.

## II

### Standard of Review

■ "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *See Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335, *rehearing denied*, (1995). In this case, Cyprus brought a motion to dismiss under Rule 12(b)(6) (1994) of the *W.Va.R.Civ.P.* for "failure to state a claim upon which relief can be granted." Because HN's response introduced materials outside the pleadings, the circuit court, with the consent of the parties, treated Cyprus' motion as one for summary judgment.[7] Therefore, we apply the *de novo* standard of review in this case.

■ Our traditional principle for granting summary judgment is stated in Syl. pt. 3,

*Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*Accord* Syl. pt. 1, *Croston v. Emax Oil Co.*, 195 W.Va. 86, 464 S.E.2d 728 (1995); Syl. pt. 1, *Williams v. Precision Coil, Inc., supra*; Syl. pt. 2, *Painter v. Peavy, supra*; Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992). *See Williams v. Precision Coil, Inc., supra* and *Painter v. Peavy, supra* for a discussion of the principles for granting summary judgment.

■ Rule 56 (1978) of the *W.Va.R.Civ.P.* is " 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law." *Williams v. Precision Coil, Inc.*, 194 W.Va. at 58, 459 S.E.2d at 335, *quoting Painter v. Peavy*, 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting, Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Subsection c of Rule 56 states, in pertinent part, that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the *moving party is entitled to a judgment as a matter of law.* [Emphasis added.]"

■ In this case, we noted that the parties agree that the issue before the circuit court concerned the interpretation of a written contract, namely, the second assignment. It is a settled principle, long recognized in this

---

6. We agree with the circuit court that the Confirmatory Assignment is superfluous in the resolution of this case since it is intended to explain a document, the second assignment, that needs no explanation.

7. Rule 12(b) (1994) of the *W.Va.R.Civ.P.* states, in pertinent part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to

state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion *shall be treated as one for summary judgment and disposed of as provided in Rule 56*, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. [Emphasis added.]

State that " '[i]t is the province of the Court, and not of the jury, to interpret a written contract.' Syl. Pt. 1, *Stephens v. Bartlett*, 118 W.Va. 421, 191 S.E. 550 (1937)." Syl. pt. 1, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40 (1984). In *Williams v. Precision Coil, Inc.*, 194 W.Va. at 62, n. 18, 459 S.E.2d at 339 n. 18, we said:

> While the determination of what constitutes a contract under our relevant cases is a question of law, the determination of whether particular circumstances fit within the legal definition of a contract under our cases is a question of fact. Subject to one exception, the determination of factual issues is solely within the province of the jury. Of course, that exception is Rule 56 dealing with summary judgments. *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964). Furthermore, we agree with the Ninth Circuit Court of Appeals that " '[i]n interpreting a contract, a court determines the existence of an ambiguity as a matter of law.' " *United States v. Johnson*, 43 F.3d 1308, 1310 (9th Cir.1995), *quoting Bauhinia Corp. v. China Nat'l Mach. & Equip. Import & Export Corp.*, 819 F.2d 247, 249 (9th Cir.1987).

▆▆▆ We note that the *de novo* review standard applied to a circuit court's entry of summary judgment is the same standard we apply when we review questions of law. *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 396 n. 19, 465 S.E.2d 841, 853 n. 19 (1995); *State v. Honaker*, 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994); *Adkins v. Gatson*, 192 W.Va. 561, 564, 453 S.E.2d 395, 399 (1994); *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). "Whether a contract is ambiguous is a legal question reviewable by this Court *de novo. See Thrift v. Hubbard*, 44 F.3d 348, 357-58 (5th Cir.1995)." *Williams v. Precision Coil, Inc.*, 194 W.Va. at 64 n. 23, 459 S.E.2d at 342 n. 23.

Guided by these principles, we next examine the circuit court's grant of summary judgment.

## III

### Interpretation of the Second Assignment

▆▆▆ Our traditional rule of contract interpretation is that a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. The rule is set forth in Syl. pt. 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), which states:

> A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

*See* Syl. pt. 2, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40 (1984) ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed"). The function of the court is to interpret and enforce written agreements and not to make, extend or limit the written agreement. Syl. pt. 3 of *Cotiga Development Co. v. United Fuel Gas Co., supra* states:

> It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.

In Syl. pt. 13, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907), we gave the following definition of ambiguity:

> Ambiguity in a statute or other instrument consists of susceptibility of two or more meanings and uncertainty as to which was intended. Mere informality in phraseology or clumsiness of expression does not make it ambiguous, if the language imports one meaning or intention with reasonable certainty.

*See Williams v. Precision Coil, Inc.*, 194 W.Va. at 64 n. 23, 459 S.E.2d at 342 n. 23; *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 432, 345 S.E.2d 33, 35 (1986).

In the second assignment, Mullins, in paragraph 1(a) assigned to HN the right to receive certain income under the acquisition

agreement up to $1,867,100 and in paragraph 1(e) assigned the rights to compel performance. The second paragraph of paragraph 1(e) reserves from the general assignment claims of the "nature contemplated in paragraph 3(b), including without limitation the right to receive payment from Cyprus of any such amount which Assignor [Mullins] has paid Assignee [HN] pursuant to paragraph 3(b)." Paragraph 1 of the second assignment states, in pertinent part:

Assignor [Mullins] hereby transfers, assigns and conveys to the Assignee [HN], its successors and assignees, all rights and benefits of the Assignor pursuant to Article 2.3 of the Acquisition Agreement.

Subject to the reservation in this paragraph 1, Assignor hereby transfers, assigns and conveys to the Assignee, its successors and assigns, all right, title and interest of the Assignor in and to the following rights under the Acquisition Agreement:

(a) all rights to receive the payment of all amounts provided in Article 2.2(2) (the "Production Payments"), up to an aggregate amount of $1,867,100.00;

\*    \*    \*    \*    \*    \*

(e) all rights to compel performance by Cyprus of, and assert claims for damages arising out of or for breach of or default by Cyprus under, Articles 2.2(2), 2.7 and 2.9, to the extent such breach or default affects the rights referred to in (a), (b) and (c) above.

Assignor [Mullins] hereby reserves from the foregoing assignment all rights under the Acquisition agreement or otherwise with respect to any amounts deducted, withheld or set-off by Cyprus by reason of any claim, allegation of claim, of the nature contemplated in paragraph 3(b), including without limitation the right to receive payment from Cyprus of any such amount which Assignor [Mullins] has paid Assignee [HN] pursuant to paragraph 3(b).

In Paragraph 3(b) of the second assignment, Mullins agrees to pay HN the amount of a deficiency in any "Production Payment" required to be made of Cyprus. Paragraph 3(b) also contains various notice provisions and deems any such payment by Mullins to be "a Production Payment." Paragraph 3(b) of the second assignment states:

In the event any Production Payment made by Cyprus at any time after the date hereof, the benefit of which has been assigned to Assignee [HN], has been reduced by reason of any claim of any kind of Cyprus, its successors and assigns against Assignor [Mullins] or Hawks Nest whether pursuant to Article 2.11 of the Acquisition Agreement or otherwise, Assignor [Mullins] agrees to pay the full amount of such deficiency to Assignee [HN], promptly after notice thereof by Assignee [HN], and Assignor [Mullins] agrees to promptly notify Assignee [HN] of any dispute, action or claim by Cyprus, its successors and assigns, of which Assignor [Mullins] becomes aware, which may result in any reduction, by set off, counterclaim, deduction or otherwise, in the amounts otherwise payable by Cyprus pursuant to Article 2.2(2) of the Acquisition Agreement. Any such payment by Assignor [Mullins] shall be deemed to be a Production Payment.

■ Cyprus argues that the reservation provision does not require payment by Mullins because the second paragraph of paragraph 1(e) reserves to Mullins the right of action when "any amount [is] deducted, withheld or set-off by Cyprus by reason of *any allegation or claim,* of the nature contemplated in paragraph 3(b). (Emphasis in original)." This argument fails to consider that payment by Mullins is required by paragraph 3(b), which is expressly included in paragraph 1(e) of the reservation. Cyprus' argument is based on a selective reading of only one paragraph of the reservation provision and even that one paragraph expressly includes the requirements of another paragraph.

According to the plain, although awkward, language of the second assignment, the essential provisions of the reservation are found in both paragraphs 1(e) and 3(b). In paragraph 1(e), the "Assignor ... reserves from [the general] ... assignment of all rights ... any amount deducted ... by Cyprus by reason of any claim ... contemplated in paragraph 3(b)" including "without limi-

tation the right to receive payment from Cyprus of any such amount which Assignor has paid Assignee...." Paragraph 3(b) requires Mullins to pay HN if Cyprus does not. Paragraph 3(b) provides that if "Cyprus ... reduced [the Production Payment] by reason of any claim of any kind ..., Assignor [Mullins] agrees to pay the full amount of such deficiency to the Assignee [HN]...." When paragraphs 1(e) and 3(b) are read together, the right to compel, which was retained by Mullins, occurs when "claim[s] ... of the nature contemplated in paragraph 3(b)" exist. The scenario of paragraph 3(b), which did not occur in this case, includes: (1) Cyprus' reducing its payment to HN; (2) Mullins, stepping into Cyprus' shoes, actually making payment of Cyprus' deficiency to HN; and finally, (3) Mullins' suing Cyprus for payment.

According to the clear and unambiguous language of the second assignment, Mullins' right of action is predicated on, first, a payment reduction by Cyprus and, second, payment of that reduction by Mullins (paragraph 3(b)). In this case, it is undisputed that Cyprus reduced its payment, but Mullins made *no* payment to HN of Cyprus' reduction. Because one of the predicates necessary for the triggering of Mullins' reservation did not occur, we find that only HN has right to bring suit in these circumstances under the second assignment.[8]

■■■ Although we find that the second assignment gave HN the right to bring suit when no payment was made by Mullins, we agree with the circuit court that the affidavit of Randall Highly is inadmissible to explain the terms of the second assignment.[9] We have long held that extrinsic evidence is not necessary to explain a written contract which is plain and unambiguous. In Syl. pt. 3, *Iafolla v. Douglas Pocahontas Coal Corpora-*

tion, 162 W.Va. 489, 250 S.E.2d 128 (1978), we stated:

> A written contract merges all negotiations and representations which occurred before its execution, and in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract which is otherwise plain and unambiguous on its face.

*Accord* Syllabus Point 1, *Warner v. Haught, Inc.,* 174 W.Va. 722, 329 S.E.2d 88 (1985).

Although we agree with the circuit court that the second assignment is plan and unambiguous and therefore, the affidavit in question should not be considered, we nonetheless disagree with the circuit court's interpretation of the reservation provision of the second assignment. Indeed, our reversal of the circuit court's interpretation of the second assignment is not *prima facie* evidence of an ambiguity in the second assignment. In *Orteza v. Monongalia County General Hospital, supra,* we stated: "Agreements are not necessarily ambiguous because the parties disagree as to the meaning of the language of the agreement." *Orteza v. Monongalia County General Hospital,* 173 W.Va. at 464, 318 S.E.2d at 43, *quoting, Richardson v. Econo–Travel Motor Hotel Corp.,* 553 F.Supp. 320 (E.D.Va.1982).

### IV

#### Conclusion

Based on our *de novo* review of the circuit court's interpretation of the written contract, we find that circuit court erred in granting summary judgment to Cyprus. Our holding is required because of the clear and unambiguous language of the written contract, which, in this case, is the assignment between Mullins and HN (the second assign-

---

8. Because the reservation provision of paragraphs 1(e) and 3(b) does not operate in this case, we need not discuss whether the general appointment provisions of paragraphs 7 and 8, relating to the appointment of HN as attorney-in-fact, would have allowed suit in circumstances where the reservation by Mullins was operative.

9. Cyprus' argument that the Bankruptcy Court recognized that the reservation provision applies in this case is not supported by the exhibits in the record from the Bankruptcy Court. Rather, the November 14, 1994 order in *Hawks Nest Bankr., supra* note 1, does not address the meaning of the reservation provision except to note the circuit court's decision in this case. *See* notes 1 and 4 for discussions of the November 14, 1994 order and the Confirmatory Agreement, respectively.

ment).[10] Based on the language of that assignment, we find that payment by Mullins to HN is a predicate for the operation of the second assignment's reservation provision. Because it is undisputed that Mullins made no payments to HN as a result of the reduced payment from Cyprus, one of the predicates necessary to trigger the operation of the reservation provision did not occur and the reservation provision did not become operational. Because the reservation provision in the second assignment did not become operational, HN has the right to bring this suit against Cyprus. HN is in effect in privity with Cyprus by virtue of the plain and unambiguous language of the second assignment.

Accordingly, for the reasons set forth above, the order of the Circuit Court of Kanawha County granting summary judgment is reversed and this case is remanded for further proceedings.

Reversed and remanded.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

10. We express no opinion concerning the merits of the underlying case.