629 S.E.2d 792

**Gloria BANKS, et al., Plaintiff Below, Appellant**

v.

**PAUL WHITE CHEVROLET, INC., Defendant Below, Appellee.**

**No. 32725.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2006.

Decided April 12, 2006.

Concurring Opinion of Justice Albright May 10, 2006.

---

John W. Barrett, Bailey & Glasser, L.L.P., Charleston, for Appellant.

Albert C. Dunn, Jr., MacCorkle, Lavender, Casey & Sweeney, P.L.L.C., Charleston, for Appellee.

PER CURIAM:

This case is before the Court on appeal from the September 10, 2004, Order of the Circuit Court of Kanawha County granting summary judgment in favor of Appellee Paul White Chevrolet. This Court has before it the petition for appeal, the response, the briefs of the parties, and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the circuit court erred in granting Appellee's motion for summary judgment. Accordingly, this Court reverses the September 10, 2004, Order of the circuit court and remands the matter for further proceedings.

## I.

### FACTS

On March 27, 2000, Gloria Banks (hereinafter, "Banks") entered into an agreement (hereinafter, the "contract") with Paul White Chevrolet (hereinafter, "Paul White") for the purchase of a car. That contract, titled "Retail Installment Contract and Security Agreement," contained the provision that

"[i]f a payment is more than 10 days late, you will be charged 5% of the unpaid portion of any regularly scheduled payment, but not less than $1.00 nor more than $5.00." In its section titled "Additional Terms of This Contract and Security Agreement," the contract contained the following provisions:

> DEFAULT: You agree that the following are additional terms and conditions of this Contract and that if one or more of the following occur you will be in default:
>
> A. You fail to make a payment in full when it is due.
>
> . . .
>
> If you default, you agree to pay the reasonable expenses, including costs and fees authorized by statute, that we incur to realize on any security interest.
>
> REMEDIES: If you are in default on this Contract, we have all of the remedies provided by law and this Contract. *Before using any remedy, we will send you any notice and wait for any cure period that the law may require for that remedy.* Our remedies include the following:
>
> A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, sales finance charges and all other agreed charges. *This right of ours is subject to your limited right to cure some defaults and to get notice of this right to cure, as provided in W.Va.Code § 46A-2-106.*
>
> . . .
>
> D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations. *This right of ours is subject to your limited right to cure some defaults and to get notice of this right to cure, as provided in W.Va.Code § 46A-2-106.*

[Emphasis added] Paul White subsequently assigned the contract to City National Bank "with recourse," meaning that Paul White remained responsible for any amount owed, such as in the case of default.

Banks timely made payments according to the contract until November of 2002, at which time she failed to make a timely payment. On or about December 12, 2002, City National Bank sent Banks a "Notice of Right to Cure Default" advising Banks that she had until December 22, 2002, to cure the default. According to Banks' deposition testimony, on or about December 17, 2002, Donald Weekley (hereinafter, "Weekley"), who apparently had a contractual relationship with Paul White, appeared at Banks' home and asked her to pay the amount of the late payment plus a $300 "fee." Weekley did not explain the basis of this "fee." Banks borrowed the money from an acquaintance and gave the money to Weekley, who accompanied Banks to the bank to cash the check from the acquaintance.[1]

Thereafter, City National Bank received regular and timely payments until April 2003. For this second nonpayment, City National Bank sent Banks a second "Notice of Right to Cure Default" on or about May 12, 2003. The notice stated that Banks had until May 22, 2003, to cure the default. Prior to this deadline to cure, Weekley, on May 14, 2003, approached Banks at her place of employment and again asked that she pay the amount of the late payment plus a $300 fee. Together, Banks and Weekley left Banks' workplace and drove to Banks' house to look for certain receipts. When Banks was unable to satisfy Weekley that payment had been made, she again borrowed the money. Banks met Weekley at her place of employment and gave him the money.

Banks subsequently filed suit against Paul White and City National Bank in the Circuit Court of Kanawha County alleging unlawful debt collection practices and breach of the duty of good faith and fair dealing.[2] By motion, Paul White sought a partial summary

---

1. Weekley apparently did not deposit the money with City National Bank until January 27, 2003, and only then after Banks inquired as to why the bank had not received the payment.

2. City National Bank was later dismissed. Banks also sought to certify the suit as a class action, but that request was ultimately denied by the court.

judgment asserting that Weekley, as Paul White's agent, engaged in repossession, not debt collection, on behalf of Paul White. The circuit court agreed. However, instead of simply granting *partial* summary judgment, the court granted full summary judgment and dismissed Banks' action altogether. The court concluded that each of Banks' causes of action were dependent on her contention that her action was a debt collection case governed by the Consumer Credit Protection Act (hereinafter, the "CCPA").[3] In concluding that Banks' action was instead a repossession case, the court determined that all of Banks' related causes of action failed. Banks now appeals the circuit court's decision.

## II.

### STANDARD OF REVIEW

■ This Court has held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

### DISCUSSION

■ The primary issue for consideration by the circuit court below of Paul White's motion for summary judgment was whether Weekley was acting on behalf of Paul White as a debt collector in violation of the CCPA or whether he was acting as a "repo man" whose actions were protected by the provisions of the Uniform Commercial Code (hereinafter, "UCC").[4] In granting Paul White's summary judgment motion, the circuit court concluded that Banks had no cause of action under the CCPA because Weekley was acting as a "repo man" rather than as a debt collector. Paul White argues, and the lower court agreed, that Weekley, as a "repo man," was acting lawfully under the provisions of the UCC to attempt, on the behalf of a seller, to repossess goods in which the seller retained a security interest. Paul White argues that the $300 fee collected by Weekley

was allowable under the UCC as an expense incurred in attempt to repossess goods.[5]

However, in the contract presented by Paul White to Banks and signed by both parties, Paul White acknowledges that Banks had certain rights if she defaulted, which rights were accorded to her under the provisions of the CCPA.[6] Those rights included Banks' right to receive notice of and to cure any default. As provided in West Virginia Code § 46A-2-106 (1998),

> after a default on any installment obligation or any other secured obligation..., a creditor may not accelerate maturity of the unpaid balance of any such installment obligation or any other such secured obligation, commence any action or demand or take possession of collateral on account of default until ten days after notice has been given to the consumer of his or her right to cure any default by tendering the amount of all unpaid sums due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges and by tendering any other performance necessary to cure such default.

Under the terms of the contract and the provisions of West Virginia Code § 46A-2-106, Banks enjoyed a cure period of ten days following the notices of default made on December 12, 2002, and May 12, 2003. The record demonstrates that Weekley approached Banks both in December of 2002 and again in May of 2003 *before* the expiration of each respective ten-day cure period. In so doing, not only did Paul White arguably violate the express terms of its own contract, but Paul White also may have invited whatever additional expenses it incurred through the employ of Weekley's services because it failed to allow Banks the time permitted to cure the default.

In its purest essence, the underlying motion raises a uniquely factual issue which does not readily lend itself to resolution by summary judgment. Here, the material

---

**3.** *See* West Virginia Code § 46A-1-101, *et seq* (1974).

**4.** *See,* West Virginia Code § 46-1-101, *et seq* (1963).

**5.** *See,* West Virginia Code § 46-2-707 and 710 (1963).

**6.** This contract was presumably prepared by Paul White and/or its attorney.

facts regarding Weekley's status were disputed and could be viewed differently by reasonable minds. For example, at no point was Banks' car ever actually and physically repossessed by Weekley on behalf of Paul White. Indeed, in view of the cure provisions of the contract, Paul White would not appear to have had a right to repossess the vehicle on either of the dates that Weekley approached Banks. Accordingly, the additional $300 fee charged by Weekley upon recovery of the late payment arguably could not be an expense incurred in an attempt to lawfully repossess goods. A reasonable conclusion might well be that the fee was a debt collector's fee, which is expressly prohibited by West Virginia Code § 46A–2–128(c) (1990).

■ Summary judgment is appropriate only if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." West Virginia Rules of Civil Procedure, Rule 56(c). In accordance with Rule 56(c), this Court has held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963); Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). The presence, as here, of a *bona fide* factual dispute on a matter so essential to the essence of Paul White's summary judgment motion precludes such a motion from prevailing. Here, there remains a factual issue as to whether a debt collection was carried out in violation of the CCPA, and that is an issue for a jury to resolve.[7]

We conclude that the record below was a record in which there existed an issue of material fact and that Paul White was not entitled to summary judgment as a matter of law. We, therefore, find that the granting of summary judgment in Paul White's favor, was improper.[8]

## IV.

## CONCLUSION

Having concluded that there were issues of material fact to be determined through trial, this Court finds that it was error for the Circuit Court of Kanawha County to enter an Order Granting Summary Judgment in favor of Appellee. Accordingly, we reverse and remand this matter to the circuit court for further proceedings consistent with this decision.

Reversed and Remanded.

ALBRIGHT, J., files a concurring opinion, in which STARCHER, J., joins.

ALBRIGHT, Justice, concurring.

(Filed May 10, 2006)

The majority conclusion, to allow this case to go forward for determination on the merits, is unquestionably correct. However, I write separately to stress that the imposition of the two $300 repossession fees is wrong as a matter of law and is not an issue that should require further examination upon remand.

As the majority clearly states, the record reveals that Paul White through its agent took action to repossess the vehicle during the ten-day cure period afforded Ms. Banks by the Consumer Credit and Protection Act (CCPA). The language of the CCPA unequivocally states that "[a] **creditor may not** . . . commence any action or demand or take possession of collateral on account of

---

7. It is true that West Virginia Code § 46A–2–115 (1974) allows for "reasonable expenses including costs and fees authorized by statute, incurred in realizing on a security interest." That provision, however, may not save Paul White. The facts arguably show that Paul White was not "realizing on a security interest" because at the time that Weekley approached Banks about the default, Paul White had no legal or contractual right to "realize on its security interest" in the

car as the ten-day cure period had not yet expired. Once again, there remains a question as to whether a debt collection was performed in violation of the CCPA.

8. We do not see fit to delve any further into the merits of the case at this time as it is more appropriate for the lower court to examine the matter further.

default **until ten days after notice has been given to the consumer** of his or her right to cure such default." W.Va.Code § 46A–2–106 (1998) (Repl. Vol. 1999) (emphasis supplied). Because Paul White had no right to repossess the secured good at the time the demand was made, the fees cannot be characterized as "repossession fees" or fees incurred in realizing a security interest at the time the agent demanded them. Additionally, the consumer is protected under the CCPA from "[t]he collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and by statute." W.Va. Code § 46A–2–128(d) (1990) (Repl. Vol. 1999). Neither the CCPA nor the agreement in this case, which expressly recognizes the cure provisions appearing in West Virginia Code § 46A–2–106, furnish such authorization. It simply makes no sense whatsoever to contemplate the possibility of collection of a repossession fee during the time when a creditor is barred by statute from actually repossessing the secured goods.

For the aforesaid reasons, I concur in the majority opinion with the understanding that the repossession fees under the circumstances of this case were imposed contrary to law and should require no further determination upon remand.

I am authorized to state that Justice STARCHER joins in this concurring opinion.