# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jannell Williams, as the Personal Representative of the Estate of Kenneth Williams, Plaintiff Below, Petitioner**

**and**

**Cheryl Rutledge, Personal Representative of the Estate of Quentin Rutledge, Defendant and Cross-Claimant Below, Petitioner**

**vs)  No. 12-0847**(Ohio County 09-C-419)

**Werner Enterprises, Inc. and Drivers Management, LLC, Defendants Below, Respondents**

**FILED**

June 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Jannell Williams, as personal representative of the Estate of Kenneth Williams, and Cheryl Rutledge, as personal representative of the Estate of Quentin Rutledge, by counsel Anthony J. Majestro, Christopher Heavens, and Frank P. Bush Jr., appeal the Circuit Court of Ohio County's order granting, in part, and denying, in part, Respondent Werner's motion for partial summary judgment, entered on October 17, 2011, and the circuit court's order clarifying its rulings, entered on October 24, 2011. Respondents Werner Enterprises, Inc. ("Werner") and Drivers Management, LLC ("Drivers Management"), by counsel Mary H. Sanders and Cindy D. McCarty, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises out of a tractor-trailer accident occurring on January 12, 2009, wherein Kenneth Williams and Quentin Rutledge were both killed. Rutledge was driving a truck owned by Werner when he veered off a snowy road in Lewis County, crashing over an embankment. Williams was in the sleeper cab of the truck at the time of the accident. A fire quickly consumed the vehicle. Petitioners and respondents disagree as to whether the fire killed both decedents or whether one or both were killed upon impact. The decedents at the time were directly employed by Drivers Management, a subsidiary of Gra-Gar, LLC ("Gra-Gar"), which is a subsidiary of Werner. Werner and Drivers Management had a contract whereby Drivers Management provided

1

drivers to Werner. Drivers Management was voluntarily dismissed by petitioners at the hearing on the motion for partial summary judgment.

Crawford and Company was hired to investigate the accident immediately thereafter. Werner was advised that the tractor-trailer was unsalvageable and therefore Werner authorized destruction of the vehicle on January 14, 2009. By letters dated February 11, 2009, and February 18, 2009, Werner was advised that the decedents' survivors had hired counsel and Werner was asked to preserve the vehicle. Werner first responded that it was attempting to locate the vehicle, and then on March 4, 2009, advised that it had decided to dispose of the vehicle as there was no issue of negligence under the Workers' Compensation Act. Subsequent to the decedents' deaths, petitioners have received workers' compensation payments under the name of Drivers Management through a sweep account[1] maintained by Werner.

Petitioners filed suit on December 9, 2009, alleging various claims, including negligence, deliberate intent, wrongful death, and negligent and intentional spoliation of evidence against Werner. On September 27, 2011, Werner filed a motion for partial summary judgment, claiming that the claims for negligence, deliberate intent, and wrongful death are all precluded by the Nebraska Workers' Compensation Act based on Werner's contention that the contract for employment with the decedents was entered into in Nebraska. Werner also argued that it was an employer of the decedents. A hearing was held on respondents' motion for summary judgment on October 7, 2011. By order dated October 17, 2011, the court granted partial summary judgment in favor of Werner, finding that Werner was the employer of the decedents based on Werner's control of the decedents' work. The court applied the workers' compensation laws of Nebraska, where decedents' employment originated, and found that respondents are entitled to immunity. As to the spoliation claim, the court found that it was the only remaining stand-alone cause of action, and that there are genuine issues of material facts regarding this claim. Therefore summary judgment on this issue was denied.

On October 21, 2011, the circuit court entered an order clarifying its order on the spoliation claims, and found that any negligent spoliation claims are barred against Werner and Gra-Gar based on workers' compensation immunity. Therefore, the court found that petitioners are barred from arguing that Werner disposed of the tractor-trailer with knowledge of a potential civil action claim for both negligent and intentional spoliation of evidence against Gra-Gar, Werner, or any subsidiary of Werner. However, the court ruled that petitioners can argue in relation to their intentional spoliation of evidence claim that Werner disposed of the tractor-trailer with knowledge of a potential civil action claim for defective product of the subject vehicle. The court also allowed evidence of other Freightliner[2] accidents and settlements against Freightliner Corporation Inc. to rebut the opinions of Werner's experts that the design of the subject tractor and other models of tractor were reasonably safe and not defective. Both this

---

[1]A sweep account is a banking arrangement wherein a checking account balance is automatically transferred to an interest-bearing account at the end of each business day. Only the amount needed to cover withdrawals or debits is kept in the account on a daily basis.

[2]Freightliner Corporation, Inc. is the company that manufactured the tractor involved in this incident. It is not involved in this appeal but was named as a defendant below.

order and the October 17, 2011, order were certified as final orders by order entered on June 15, 2012.[3]

We review a summary judgment order under a *de novo* standard of review. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 2, *Id.* (citation omitted). This Court has held that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. [242] at 252, 106 S.Ct. [2505] at 2512, 91 L.E.2d [202] at 214 [1986]." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60, 459 S.E.2d 329, 337 (1995).

On appeal, petitioners first argue that the circuit court erred in granting partial summary judgment on the deliberate intent, negligence, wrongful death, and negligent spoliation of evidence claims by finding that Werner was an employer of the decedents and therefore entitled to workers' compensation immunity. Petitioners also argue that the circuit court erred in applying the Nebraska Workers' Compensation Act and Nebraska law. Petitioners argue that the circuit court also erred in granting partial summary judgment in favor of Werner on petitioners' claim for negligent spoliation of evidence which would be used in a claim against a third-party, as this claim is a stand-alone tort that does not fall within any immunity afforded by an applicable workers' compensation scheme. Finally, petitioners argue that the circuit court erred in precluding them from arguing a potential claim of negligent vehicle maintenance in connection with their spoliation of evidence claims on the basis that the entity responsible for vehicle maintenance, Gra-Gar, LLC, a subsidiary of Werner, was also an employer of the decedents and thereby entitled to workers' compensation immunity. As to each of these arguments, this Court finds no error.

A review of the record below shows that the circuit court addressed each of these issues at length. As to workers' compensation immunity, the circuit court properly found that because Werner exercised control over the decedents' work and held itself out as the employer, Werner was in fact a joint employer and therefore entitled to workers' compensation immunity. Moreover, the circuit court properly applied Nebraska Workers' Compensation law to this claim, as Werner is a Nebraska corporation, the employment relationship was entered into in Nebraska, and the beneficiaries received workers' compensation benefits from Werner pursuant to Nebraska law. The rulings on the spoliation claim were correct, as the circuit court found that spoliation of evidence is not a stand-alone tort when the spoliation is a result of negligence. Additionally, we agree with the circuit court that the evidence shows that Gra-Gar, LLC is a subsidiary of Werner and therefore, under the facts of this case, entitled to immunity under the same theory that Werner is entitled to immunity. Having reviewed the circuit court's "Order"

---

[3]The June 15, 2012, order also certified four questions "in the event this case would be remanded on appeal for further proceedings." Because this Court is not remanding this case for further proceedings, these certified questions are moot and this Court will not address them. Likewise, this Court will not address respondents' cross-assignments of error, as both deal with the certified questions.

entered on October 17, 2011, and "Order" entered on October 24, 2011, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis

12-0847

IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

JANNELL WILLIAMS, as the
Personal Representative of the Estate
Of Kenneth Williams,

      Plaintiff,

v.                                                                              Civil Action No: 09-C-419

WERNER ENTERPRISES, INC.,
a Nebraska Corporation,
WERNER ENTERPRISES, LLC,
a Nebraska Corporation,
DRIVERS MANAGEMENT, LLC,
a NEBRASKA Corporation,
MARK GRIFFITH, Individually and as
an Agent for CRAWFORD & COMPANY,
CRAWFORD & COMPANY, a
Georgia Corporation, FREIGHTLINER
CORPORATION, INC., an Oregon
Corporation, DAIMLER TRUCKS
NORTH AMERICA, LLC, a
Delaware Corporation, and Cheryl
Rutledge, as the Personal Representative
of the Estate of Quentin Rutledge.

      Defendants.

## ORDER

On the 7th day of October, 2011, a hearing was held regarding the Defendants, Werner

Enterprises, Inc., and Drivers Management, LLC's Motion for Partial Summary Judgment

Regarding Plaintiff's and Defendant Rutledge's Claims of Deliberate Intent, Negligence and

Wrongful Death and Spoliation Claims. After considering the Motions, Responses, Replies, oral

arguments, exhibits and pertinent legal authorities, the Court sets forth its decision below.

## STATEMENT OF THE FACTS AND ARGUMENTS

A brief statement of the facts reveals that the Plaintiff's decedent, Kenneth Williams ("Williams"), suffered injuries from a vehicular accident causing his death on or about January 12, 2009. Williams was a passenger in a tractor-trailer driven by co-worker and Defendant's decedent, Quentin Rutledge ("Rutledge"). On January 12, 2009, Williams and Rutledge, both long distance truck drivers, were driving through Lewis County, West Virginia during snowy weather to transport cargo from California to Maryland. Unfortunately, the tractor-trailer went out of control causing the vehicle to crash. Rutledge also suffered deadly injuries from this accident. After the crash, a fire commenced that eventually consumed the subject vehicle.

The tractor-trailer was owned by Werner Enterprises, Inc. ("Werner"). Soon after the accident, Werner hired Crawford and Company to go to the accident scene to perform an investigation. Crawford and Company reported to Werner its assessment of the accident. Werner was advised in part that the accident was a single-vehicle accident, which involved only Werner employees, and no other parties were involved. In addition, Werner was advised that the tractor-trailer was not salvageable and thereafter approved of the disposal of the subject vehicle on January 14, 2009. Werner received a letter dated February 11, 2009 on February 18, 2009 wherein counsel for Plaintiff first advised Werner of his representation of Williams' family regarding this accident and requested that the tractor-trailer be preserved by letter dated February 11, 2009. Werner responded to this letter on or about February 27, 2009 wherein Werner advised Plaintiff's counsel by telephone that Werner was attempting to locate the subject vehicle. Thereafter, by letter dated March 4, 2009, Werner informed Plaintiff's counsel that it made the decision to dispose of the subject vehicle because there was no issue of negligence under the "Work Comp Act."

Williams and Rutledge were residents of Michigan at the time of their death. Werner is incorporated under the laws of Nebraska. At the time of the accident, a Services Agreement, dated December 29, 2000, existed between Werner and Drivers Management, LLC ("DML"), a

Delaware Limited Liability Company. DML is a wholly owned subsidiary of Gra-Gar, LLC, which is a wholly owned subsidiary of Werner. The Services Agreement reflects that DML agreed to provide Werner over-the-road truck drivers. In this instant case, the pertinent provision of the Services Agreement states:

> Employment Status: All drivers provided by DML will be employees of DML for all purposes including, without limitation, federal and state withholding taxes unemployment taxes, workers' compensation insurance and employee benefits.

Williams and Rutledge voluntarily dismissed DML from the case at the hearing. Thus, the only remaining claims by Williams and Rutledge (Rutledge previously filed a cross-claim against Werner on the theories of negligence, wrongful death, and spoliation) are against Werner based on the theories of negligence, wrongful death, and spoliation. Williams and Rutledge argue that only DML, not Werner, was their employer for "all purposes," including workers compensation. They argue that Werner has not established itself as their employer, and thus, Werner is ineligible for workers' compensation immunity. As a result of this position, they assert claims for negligence and wrongful death based upon Werner's negligence in its trucking operations. They allege that Werner did not act as a reasonable and prudent motor carrier by:

(a) Grouping together Williams and Rutledge as a team, two (2) inexperienced drivers with less than four (4) months experience each;

(b) Failing to provide tire chain ("cables") to Williams and Rutledge and further prohibiting them from taking the cables outside of the western states; and

(c) Failing to provide weather information to Williams and Rutledge, a result of Werner's decision to assign three hundred (300) drivers to a single dispatcher on the weekend, compared to sixty (60) drivers to a dispatcher on the weekdays.

Their claims for negligent and intentional spoliation of evidence are based upon Werner's disposal of the tractor-trailer, including a claim for punitive damages resulting from Werner's willful, wanton or reckless conduct. They contend that the destruction of the tractor-trailer prevented them from pursuing a claim for defective product against the manufacturer of the

subject vehicle as well as a claim for negligent maintenance against the entities responsible for the maintenance of the subject vehicle.

Werner contends that Williams and Rutledge, both residents of Michigan, were employed by Werner and its wholly-owned subsidiary, DML. Werner and DML are located in Omaha, Nebraska. Williams and Rutledge entered into the employment relationship in Nebraska and were dispatched by Werner out of Omaha, Nebraska. It argues that Werner, as the parent company of a wholly owned subsidiary (i.e., DML), is also deemed to be the employer of Williams and Rutledge for immunity under workers' compensation acts. In addition, Werner claims to be an employer pursuant to the loaned servant doctrine and by giving assignments to and directing the activities of the long distance truck drivers. As such, Werner contends that it was a joint or special employer of Williams and Rutledge.

Werner argues that Williams and Rutledge were covered by the Nebraska Workers' Compensation Act. Werner asserts that when a non-resident employee (i.e., Williams and Rutledge) is injured in West Virginia and covered by the workers' compensation scheme of another state (i.e., Nebraska), the workers' compensation scheme of that other state is the exclusive remedy for the employee. It further asserts that in Nebraska, the Nebraska Workers' Compensation Act is the exclusive remedy against an employer.

As to the spoliation issue, Werner argues that disposal of the subject vehicle was appropriate under the circumstances. Werner contends that it did not foresee any litigation arising from a single-vehicle accident involving only their employees caused by inclement weather conditions. In light of this and upon its determination that the subject vehicle was not salvageable, Werner authorized disposal of the subject vehicle.

### STANDARD OF REVIEW AND PERTINENT LEGAL AUTHORITIES

1. Summary judgment "...shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law...." West Virginia Rules of Civil Procedure, Rule 56(c).

2. "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing of an essential element of the case that it has a burden to prove." Syl. Pt. 4, *Painter v. Peavy*, 451 S.E.2d 755 (W.Va. 1994). Rule 56 is "...designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial, if in essence there is no real dispute as to salient facts or if only a question of law is involved...." *Id.* at 758.

3. "A party who moves for summary judgment has the burden of showing that any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. Pt. 6, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of N.Y.*, 133 S.E.2d 770 (W.Va. 1963).

4. "Roughly stated, 'genuine issue' for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trial worthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. The opposing half of the trial worthy issue is present where the nonmoving party can point to one or more disputed 'material' facts. A material fact is one that has the capacity to sway the outcome of the litigation under applicable law." Syl. Pt. 5, *Jividen v. Law*, 461 S.E.2d 451 (W.Va. 1995).

5. "A dispute about a material fact is 'genuine' only when a reasonable jury could render a verdict for the nonmoving party, if the record at trial were identical to the record compiled in the summary judgment proceedings before the circuit court." *Powderidge Unit Owners Ass'n v. Highland Hills Properties Ltd.*, 474 S.E.2d 872, 887 (W.Va. 1996).

6. "If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence

5

attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syl. Pt. 3, *Cavender v. Fouty*, 464 S.E.2d 736 (W.Va. 1995) (quoting Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329 (W.Va. 1995)). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence," and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Painter v. Peavy*, 451 S.E.2d 755, 758 (W.Va. 1994).

7. "Summary judgment cannot be defeated on the basis of factual assertions contained in the brief of the party opposing a motion for such judgment." Syl. Pt. 3, *Guthrie v. Northwestern Mut. Life Ins. Co.*, 208 S.E.2d 60 (W.Va. 1974).

8. "A non-resident employee who is injured in this State and is protected under the terms and provisions of the workers' compensation laws of a foreign state shall not be entitled to the benefits and privileges provided under the West Virginia Workers['] Compensation Act, including the right to file and maintain a deliberate intention cause of action under W. Va. Code § 23-4-2(c)(2) ..." Syl. Pt. 3, *Easterling v. American Optical Corp.*, 207 W.Va. 123, 126, 529 S.E.2d 588, 591 (2000).

9. "The courts of West Virginia have subject matter jurisdiction over a cause of action brought by an out-of-state employee against an out-of-state employer for an injury occurring in West Virginia, where the complaint can be fairly read as setting out a cause of action under the laws of the foreign jurisdiction wherein the employer is situate, and wherein the employer is obligated to carry some form of workers' compensation." *Id.* at Syl. Pt. 5.

10. West Virginia Code § 23-2-1c(c) states that "[i]f the employee is a resident of a state other than this state and is subject to the terms and provisions of the workers' compensation law or similar laws of a state other than this state, the employee and his or her dependents are not entitled to the benefits payable under this chapter on account of injury, disease or death

6

in the course of and as a result of employment temporarily within this state, and the rights of the employee and his or her dependents under the laws of the other state shall be the exclusive remedy against the employer on account of any injury, disease or death."

11. "To ascertain whether a workman is an employee or an independent contractor each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling, but all must be considered together." Syl. Pt. 1, *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966).

12. "In determining whether a workman is an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done." Syl. Pt. 2, *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966).

13. "If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done." Syl. Pt. 3, *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966)(quoting Point 2, Syllabus, *Spencer v. Travelers Insurance Company*, 148 W.Va. 111 (133 S.E.2d 735)).

14. "In determining whether one is an employee or an independent contractor within the meaning of the workmen's compensation act, the act must be given a liberal construction in favor of the workman and any doubt is to be resolved in favor of his status as an employee, rather than an independent contractor." Syl. Pt. 4, *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966).

15. "If two or more related corporations or limited liability companies concurrently employ the same individual and compensate such individual through a common paymaster which is one of such corporations or limited liability companies, each such corporation or limited

7

liability company shall be considered to have paid as remuneration to such individual only the amounts actually disbursed by it to such individual and shall not be considered to have paid as remuneration to such individual amounts actually disbursed to such individual by another of such corporations or limited liability companies. An employee of a wholly owned subsidiary shall be considered to be concurrently employed by the parent corporation, company, or other entity and the wholly owned subsidiary whether or not both companies separately provide remuneration." Neb. Rev. St. § 48-648(2)

16. The loaned servant doctrine provides that an employee directed or permitted to perform services for another "special" employer may become that employer's employee while performing those services (citation omitted). The doctrine is based upon the premise that an employee may have more than one employer while doing a specific act (citations omitted). See, Maynard v. Kenova Chemical Co., 626 F.2d 359, 361-362 (4th Cir.1980).

17. "[T]he rights and duties under our workmen's compensation statute are no longer contractual but grow out of the employer-employee status to which the law attaches certain duties and responsibilities. The liability of employers arises from the law itself, rather than from any agreement of the parties. The only significance adhering to the contractual relationship is the existence of an employer-employee relationship. Once the employer-employee relationship is established, the statute imposes certain duties and responsibilities on the parties to that relationship." See, Lester v. State Workmen's Compensation Com'r, 242 S.E.2d 443, 451 (W.Va. 1978).

18. "When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury." Neb. Rev. St. § 48-101

8

19. The Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. *Tompkins v. Raines*, 247 Neb. 764, 530 N.W.2d 244 (1995).

20. "West Virginia does not recognize spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action." Syl. Pt. 2, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003).

21. "The tort of negligent spoliation of evidence by a third party consists of the following elements: (1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or potential civil action; (3) a duty to preserve evidence arising from an Agreement, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; and (6) damages. Once the first five elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The third-party spoliator must overcome the rebuttable presumption or else be liable for damages." Syl. Pt. 8, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003).

22. "West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party." Syl. Pt. 9, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003).

23. "Intentional spoliation of evidence is defined as the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." Syl. Pt. 10, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003).

24. "The tort of intentional spoliation of evidence consists of the following elements: (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential

9

civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages. Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The spoliator must overcome the rebuttable presumption or else be liable for damages." Syl. Pt. 11, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003).

25. "In actions of tort, where ... willful ... conduct ... affecting the rights of others appear[s] ... the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous." Syl. Pt. 12, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003) (quoting Syllabus Point 4, in part, *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895)).

## DISCUSSION

### Negligence and Wrongful Death Claims

The critical issue as to the claims for negligence and wrongful death is whether Werner was an employer of both Williams and Rutledge. To answer this question, the Court must examine the factors in determining whether a worker is an employee or independent contractor. In determining whether one is an employee or an independent contractor within the meaning of the workmen's compensation act, the act must be given a liberal construction in favor of the workman and any doubt is to be resolved in favor of his status as an employee, rather than an independent contractor. Syl. Pt. 4, *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966). If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done. Syl. Pt. 3, *Myers v. Workmen's Compensation*

10

*Commissioner,* 150 W.Va. 563, 148 S.E.2d 664 (1966) (quoting Point 2, Syllabus, *Spencer v. Travelers Insurance Company,* 148 W.Va. 111 (133 S.E.2d 735)). In the instant case, the Court finds that Werner distinctly directed Williams and Rutledge to transport the cargo to Maryland, and as such, Werner supervised the activities of Williams and Rutledge. Therefore, the Court finds that Werner was the employer of Williams and Rutledge.

Unfortunately for Williams and Rutledge, their reliance on the pertinent provision of the Services Agreement mention hereinabove cannot assist them in support of their contention that DML, and not Werner, was the employer of Williams and Rutledge. Our Supreme Court has stated that the rights and duties under our workmen's compensation statute are no longer contractual but grow out of the employer-employee status to which the law attaches certain duties and responsibilities. The liability of employers arises from the law itself, rather than from any agreement of the parties. The only significance adhering to the contractual relationship is the existence of an employer-employee relationship. Once the employer-employee relationship is established, the statute imposes certain duties and responsibilities on the parties to that relationship. *See, Lester v. State Workmen's Compensation Com'r,* 242 S.E.2d 443, 451 (W.Va.1978). For the reasons discussed above, it is obvious that Werner controlled and gave instructions to Williams and Rutledge as to their job assignments. The allegations of Williams and Rutledge in support of their claims for negligence and wrongful death further substantiate this Court's finding that Werner was the employer of Williams and Rutledge. Williams and Rutledge assert that Werner did not act as a reasonable and prudent motor carrier by:

(1) Grouping together Williams and Rutledge as a team, two (2) inexperienced drivers with less than four (4) months experience each;

(2) Failing to provide tire chain ("cables") to Williams and Rutledge and further prohibiting them from taking the cables outside of the western states; and

11

(3) Failing to provide weather information to Williams and Rutledge, a result of Werner's decision to assign three hundred (300) drivers to a single dispatcher on the weekend, compared to sixty (60) drivers to a dispatcher on the weekdays.

A careful review of these contentions further supports the finding and conclusion that Werner controlled the duties of Williams and Rutledge. For instance, the first contention indicates that Werner directed Williams and Rutledge to work together as a team. The second contention suggests that Werner made the decision to prevent Williams and Rutledge from taking cables. Lastly, the third contention shows that Werner made the determination as to the number of drivers (which included Williams and Rutledge) assigned to a dispatcher.

In accordance with *Myers, supra*, this Court believes it is prohibited from looking at the Services Agreement in determining whether a worker is an employee because the controlling factor is whether the hiring party retains the right to control and supervise the work to be done. However, even if this Court could consider the Services Agreement, Werner would likewise be considered an employer (i.e., "special employer") under the loaned servant doctrine pursuant to the facts of this case. The loaned servant doctrine provides that an employee directed or permitted to perform services for another "special" employer may become that employer's employee while performing those services (citation omitted). The doctrine is based upon the premise that an employee may have more than one employer while doing a specific act (citations omitted). *See, Maynard v. Kenova Chemical Co.*, 626 F.2d 359, 361-362 (4th Cir.1980). Although not binding on this Court as persuasive authority, it must be noted that under the Nebraska statute, an employee of a wholly owned subsidiary shall be considered to be concurrently employed by the parent corporation, company, or other entity and the wholly owned subsidiary whether or not both companies separately provide remuneration. *See, Neb. Rev. St. § 48-648(2)*. As a result, the evidence supports the finding that Williams and Rutledge were employees of Werner as there is no genuine issue of a material fact as to this finding.

12

As this Court has determined that Werner was the employer of Williams and Rutledge, it must now decide whether the negligence and wrongful death claims by Williams and Rutledge against Werner are excluded by workers' compensation immunity. A non-resident employee who is injured in this State and is protected under the terms and provisions of the workers' compensation laws of a foreign state shall not be entitled to the benefits and privileges provided under the West Virginia Workers['] Compensation Act, including the right to file and maintain a deliberate intention cause of action under W. Va. Code § 23-4-2(c) (2). Syl. Pt. 3, *Easterling v. American Optical Corp.*, 207 W.Va. 123, 126, 529 S.E.2d 588, 591 (2000). It is undisputed that both Williams and Rutledge were residents of Michigan at the time of the accident. Because this Court has found Werner to be the employer, the Court also finds that the deadly injuries suffered by Williams and Rutledge while transporting cargo to Maryland arose out of and in the course of their employment with Werner. Hence, the Court must now consider the workers' compensation law of Nebraska (i.e., the foreign state). Under Nebraska law, when personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury. *See*, Neb. Rev. St. § 48-101. The Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. *Tompkins v. Raines*, 247 Neb. 764, 530 N.W.2d 244 (1995). The Nebraska law is well-defined and unambiguous in that the Nebraska Workers' Compensation Act is the exclusive remedy against an employer. As a result of the existence of an employer –employee relationship between Werner and both Williams and Rutledge, the only remedy for Williams and Rutledge is the Nebraska Workers' Compensation Act. Therefore, the claims of Williams and Rutledge for negligence and wrongful death against Werner are barred by workers' compensation immunity.

13

## Spoliation Claim

By previous Order, this Court found that the spoliation claim was a stand-alone cause of action. However, in light of the Court's recent finding that Werner was the employer of Williams and Rutledge, the "intentional" spoliation of evidence claim, and not the "negligent" spoliation of evidence claim, is the only remaining stand-alone cause of action. West Virginia does not recognize spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action. Syl. Pt. 2, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003). On the other hand, West Virginia does recognize intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party. Syl. Pt. 9, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003). Intentional spoliation of evidence is defined as the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action. Syl. Pt. 10, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003). The tort of intentional spoliation of evidence consists of the following elements: (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages. Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The spoliator must overcome the rebuttable presumption or else be liable for damages. Syl. Pt. 11, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003).

The Court finds that Williams and Rutledge have produced sufficient evidence to meet their burden of showing that there exists a genuine dispute of facts as to whether there was an intentional spoliation of evidence by Werner. For instance, there is a definite dispute as to whether Werner had disposed of the tractor-trailer with knowledge of a potential civil action

14

(e.g., a claim for negligent maintenance and/or a claim for defective product of the subject vehicle). There also exists a question as to the intent of Werner to defeat the ability of Williams and Rutledge to prevail in a potential civil action. Thus, there exists a real discord as to the salient facts on the spoliation claim. *See, Painter v. Peavy*, 451 S.E.2d 755 (W.Va. 1994). Furthermore, the claim for punitive damages by Williams and Rutledge may be applicable if a jury would find that Werner intentionally destroyed evidence for the purpose to defeat a lawsuit. *See, Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003).

WHEREFORE, it is ORDERED, ADJUDGED, and DECREED as follows:

1. That Werner's Motion for Partial Summary Judgment Regarding Plaintiffs' and Defendant Rutledge's Claims of Deliberate Intent, Negligence and Wrongful Death is GRANTED for the reasons set forth above;

2. That Werner's Motion for Partial Summary Judgment Regarding Plaintiffs' and Defendant Rutledge's Claims of Spoliation is DENIED for the reasons set forth above;

3. That the objections of the parties to any adverse ruling are noted; and

4. That the Clerk of the Circuit Court shall send an attested copy of this Order to all counsel of record.

ENTERED this 27th day of October, 2011.

MARTIN J. GAUGHAN, JUDGE

15

## IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

CIRCUIT COURT
OF OHIO COUNTY

2011 OCT 24  AM 9 36

BRENDA L. MILLER

JANNELL WILLIAMS, as the
Personal Representative of the Estate
Of Kenneth Williams,

      Plaintiff,

v.

                                     Civil Action No: 09-C-419

WERNER ENTERPRISES, INC.,
a Nebraska Corporation,
WERNER ENTERPRISES, LLC,
a Nebraska Corporation,
DRIVERS MANAGEMENT, LLC,
a NEBRASKA Corporation,
MARK GRIFFITH, Individually and as
an Agent for CRAWFORD & COMPANY,
CRAWFORD & COMPANY, a
Georgia Corporation, FREIGHTLINER
CORPORATION, INC., an Oregon
Corporation, DAIMLER TRUCKS
NORTH AMERICA, LLC, a
Delaware Corporation, and Cheryl
Rutledge, as the Personal Representative
of the Estate of Quentin Rutledge.

      Defendants.

## ORDER

The Court has pending before it several motions which need to be ruled upon. The Court will address each of these motions herein below after considering the motions, responses, arguments, exhibits and pertinent legal authorities.

### *Defendant Werner's Motion for a Jury View*

Werner moves the Court to permit the jury to inspect an exemplar model of the subject vehicle during trial. In response, Williams and Rutledge argue that Werner has never previously advised them of its intention to request a jury view and has failed to provide the subject for inspection.

**504**

West Virginia Code Section 56-6-17 allows a party to request a jury view and this Court has discretion to grant the motion, provided such view is necessary to a just decision. The Court finds that Werner's motion for a jury view is untimely, especially because the motion was filed after the final pretrial hearing. In addition, the Court finds that the requested view would be of limited value to assist the jury, and to permit a view at this late stage of the proceedings would be unfairly prejudicial to Williams and Rutledge.

### Motion to Clarify and/or Reconsider the Court's Order on Spoliation Claims

Williams and Rutledge move the Court to Clarify and/or Reconsider the Court's Order on Spoliation Claims previously entered. Williams and Rutledge agree that the Court was correct that West Virginia would not recognize a stand-alone claim for negligent spoliation of evidence against Werner in this case if the evidence destroyed (i.e., the subject tractor-trailer) were to be used against Werner itself. The Court finds that the same rationale would also extend to Werner's subsidiaries, which includes Gra-Gar, LLC. The basis for this finding is that Werner and Gra-Gar, LLC are concurrent employers of both Williams and Rutledge. The Nebraska law is clear in that the Nebraska Workers' Compensation Act is the exclusive remedy against an employer. As a result of the existence of an employer –employee relationship between Werner and Gra-Gar, LLC and Williams and Rutledge, the only remedy for Williams and Rutledge against Werner and Gra-Gar, LLC is the Nebraska Workers' Compensation Act. Therefore, the claims of Williams and Rutledge for negligent spoliation of evidence against Gra-Gar, LLC or any other subsidiary of Werner are barred by workers' compensation immunity.

In light of this ruling, Williams and Rutledge are prohibited from arguing at trial whether Werner had disposed of the tractor-trailer with knowledge of a potential civil action claim (i.e., for negligent maintenance of the tractor-trailer) for *both negligent and intentional spoliation of evidence* against Gra-Gar, LLC or any other subsidiary of Werner, as the same is barred by workers' compensation immunity. However, Williams and Rutledge, for their claim for intentional spoliation of evidence, are permitted to argue at trial their contention that Werner

2

had disposed of the tractor-trailer with knowledge of a potential civil action claim for defective product of the subject vehicle.

*Werner's Motion in Limine to exclude evidence regarding settlements by Freightliner and Werner, including cases involving fire*

Werner seeks to prohibit Williams and Rutledge from attempting to introduce evidence regarding other accidents where a Freightliner vehicle was involved, including but not limited to the settlement of those matters. In response, Williams and Rutledge argue that Werner's experts purport to opine that the design of the subject tractor and other models of tractor are reasonably safe and not defective. As a result of the opinions of Werner's experts, Williams and Rutledge contend that the results of other cases and claims against Freightliner are proper for cross examination as to the basis for these opinions.

The Court finds that Williams and Rutledge are permitted to introduce evidence regarding other accidents where a Freightliner vehicle was involved to rebut the opinions of Werner's experts that the design of the subject tractor and other models of tractor were reasonably safe and not defective.

However, Williams and Rutledge shall not introduce evidence as to the amounts of any settlements. They are permitted to introduce into evidence any verdicts, but not the amount of the verdict, against Freightliner as it relates to this issue, provided a proper foundation is established prior to the admission of such evidence. In the event a proper foundation is not established or the relevancy of certain evidence becomes an issue at trial, the Court will revisit this motion.

*Motion by Williams and Rutledge for additional preemptory challenges*

The Court will defer on ruling on this motion until the morning of trial.

**WHEREFORE, it is ORDERED, ADJUDGED, and DECREED as follows:**

1. Werner's Motion for a Jury View is **DENIED** for the reasons set forth above;

3

**506**

2. The Motion of Williams and Rutledge to Clarify and/or Reconsider the Court's Order on Spoliation Claims previously entered is **DENIED** for the reasons set forth above;

3. Werner's Motion in Limine to exclude evidence regarding settlements by Freightliner and Werner, including cases involving fire is **DENIED** for the reasons set forth above;

4. The Motion by Williams and Rutledge for additional preemptory challenges is deferred for ruling until the morning of trial;

5. That the objections of the parties to any adverse ruling are noted; and

6. That the Clerk of the Circuit Court shall send an attested copy of this Order to all counsel of record.

ENTERED this 21 day of October, 2011.

_____
MARTIN J. GAUGHAN, JUDGE

A copy, Teste:

_____
Circuit Clerk

4

507

IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

- - -

JANNELL WILLIAMS, as the Personal
Representative of the Estate of
Kenneth Williams,

   Plaintiff,

vs.              Civil Action No. 09-C-419

WERNER ENTERPRISES, INC., a
Nebraska Corporation, WERNER
ENTERPRISES, LLC, a Nebraska
Corporation, DRIVERS MANAGEMENT,
LLC, a Nebraska Corporation, MARK
GRIFFITH, Individually and as an
Agent for CRAWFORD & COMPANY,
CRAWFORD & COMPANY, a Georgia
Corporation, FREIGHTLINER
CORPORATION, INC., an Oregon
Corporation, DAIMLER TRUCKS NORTH
AMERICA, LLC, a Delaware
Corporation, and CHERYL RUTLEDGE,
as the Personal Representative of
the Estate of Quentin Rutledge,

   Defendants.

- - -

   Transcript of proceedings in the above-entitled matter,
before the Honorable Martin J. Gaughan, held in the
Ohio County Courthouse, 1500 Chapline Street, Wheeling,
West Virginia, commencing on October 24, 2011.

- - -

COPY